**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

**THI PHUOC LUONG**,

      Petitioner,

      v.

      Case No. 2:26-cv-02448-BCL-atc

**CHRISTOPHER BULLOCK**,
Field Office Director of U.S. Immigration
and Customs Enforcement, New Orleans
Field Office,

      Respondent.

---

**ORDER DENYING § 2241 PETITION**

---

Petitioner Thi Phuoc Luong has filed a Petition for Habeas Corpus under 28 U.S.C. § 2241, by which she challenges her detention without a bond hearing. Doc. 1, at 1.

The Petition for habeas corpus (Doc. 1) is **DENIED** for the reasons that follow.

## BACKGROUND

Petitioner, who is a citizen of Vietnam, entered the United States in August of 2024. Doc. 1, at 3. Petitioner entered the country without inspection and she was later processed for immigration court and removal proceedings. *Id.* She was then released, purportedly under 8 U.S.C. § 1226(a), into the interior of the United States. *Id.*

"Approximately six months ago," Petitioner voluntarily appeared at an Immigration and Customs Enforcement office for a check-in, at which she was detained. *Id.* She remains detained

1

at the West Tennessee Detention Facility. *Id.* Petitioner seeks release or an individualized bond hearing under 8 U.S.C. § 1226(a). *Id.*, at 15.

## LEGAL STANDARD

Section 2241 authorizes a court to issue a writ of habeas corpus when an individual "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). An alien seeking to challenge her detention relating to removal proceedings may in some circumstances seek relief through a Section 2241 petition. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Section 2243 directs the judge entertaining an application for a writ of habeas corpus to "forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243. The last clause of Section 2243 imposes "a duty to screen out a habeas corpus petition which should be dismissed for lack of merit on its face," as where "the necessary facts can be determined from the petition itself without need for consideration of a return." *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970).

## ANALYSIS

The Court denies the Petition. The exhaustion doctrine bars review of Petitioner's statutory claims. Moreover, Petitioner's detention without a bond hearing does not violate the Immigration and Nationality Act, the Administrative Procedures Act, or the Constitution.

### I.     Petitioner's Claims challenging application of 8 U.S.C. § 1225 fail.

#### A.  The Exhaustion Doctrine bars review of Petitioner's statutory claims.

The Supreme Court "long has acknowledged the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). That requirement makes obvious sense when Congress requires exhaustion. It arguably makes less sense when, as in Section 2241, Congress has not done

so. Perhaps the so-called prudential exhaustion doctrine—a matter of "sound judicial discretion," *id.*—can be explained as an aspect of ripeness, the idea being that there is no ripe dispute if the Executive Branch has not had its final say. Or perhaps it is a shirking of the federal courts' "virtually unflagging" duty to exercise jurisdiction in cases properly before them. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013)).

In any event, both the Supreme Court and the Sixth Circuit have embraced the doctrine, which is thus binding on this Court. *See, e.g.*, *McCarthy*, 503 U.S. at 144; *see also Shearson v. Holder*, 725 F.3d 588, 593–94 (6th Cir. 2013). Exhaustion gives an agency "the opportunity to correct its own mistakes with respect to the programs it administers"; "discourages disregard of the agency's procedures"; promotes efficiency because "[c]laims generally can be resolved much more quickly and economically before an agency"; and "may produce a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quotation marks and citations omitted).

True, the exhaustion requirement can be excused if exhaustion would be futile.  But, as the Sixth Circuit has recently explained, in determining whether exhaustion would be futile, "the crucial inquiry [is] whether the agency can provide the relief requested if the argument succeeds, not whether it is likely to succeed." *Smith v. United States Securities & Exchange Commission*, 171 F.4th 798, 811 (6th Cir. 2026).[1]  And, here, the Immigration Judge or Board of Immigration Appeals could certainly grant petitioner a bond hearing or release on bond if she were to prevail

---

[1] *Smith* addressed the futility exception in the context of an express exhaustion requirement that excepted situations in which "there was reasonable ground for … failure to" exhaust. *Id.* at 811 (quoting 15 U.S.C. § 78y(c)(1)). That makes no difference: There is no logical reason for treating the concept of futility differently in the context of a prudential rule than in the context of a statute with a generally worded exception that encompasses the concept of futility.

on her claims; indeed, the whole theory of her claims is that the law compels the IJ to give her such a hearing (and not, say, that the federal courts should be stepping in to run bond proceedings on a categorical basis). While Petitioner offers a brief argument to the contrary on the ground that "the agency is legally and policy-bound to deny the requested relief," Doc. 1 at 5, that position is flatly contrary to *Smith*, where the Sixth Circuit rejected a similar argument with the observation that "[a] party … is not excused from making an argument before an agency simply because the argument is destined to lose." 171 F.4th at 811.

In sum, Petitioner's statutory claims are barred by the exhaustion doctrine, and are due to be rejected for that reason alone. [2]

**B. Under the governing statutes, Petitioner is an "applicant seeking admission" subject to mandatory detention.**

Even if she were not barred by the exhaustion doctrine, Petitioner's statutory claims fail on the merits. Petitioner's statutory eligibility for a bond hearing is determined by whether her detention is governed by 8 U.S.C. § 1225(b)(2) or 8 U.S.C. § 1226(a). Section 1225(b)(2) provides:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). In contrast, Section 1226(a) provides, in relevant part:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General--
>
> **(1)** may continue to detain the arrested alien; and
>
> **(2)** may release the alien on--

---

[2] Petitioner's constitutional claims are not barred by the exhaustion requirement because "the BIA cannot adjudicate the constitutionality of the statutes it administers." (citing *Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006)).

**(A)** bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

**(B)** conditional parole . . . .

8 U.S.C. § 1226(a)(1)–(2).

Petitioner is an "applicant for admission" subject to mandatory detention under Section 1225(b)(2). "Congress defined 'applicant for admission' broadly in Section 1225(a)(1) to include all 'alien[s] present in the United States who have not been admitted.'" *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 504 (5th Cir. 2026); *see* 8 U.S.C. § 1225(a)(1) ("An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.").[3] That definition encompasses Petitioner because she has not been legally admitted. *See* Doc. 1, at 3-4; *Avila v. Bondi*, 170 F.4th 1128, 1133 (8th Cir. 2026). The passage of time makes no difference. Unless and until Petitioner is granted authorization and lawfully admitted into the United States, she remains an "applicant for admission." As such, the Petitioner's detention is mandatory under Section 1225(b)(2).

It does not matter that Petitioner is not currently at the border, but instead has been living in the interior. The statutory language sweeps broadly to cover all "applicant[s] for admission." If Congress had intended Section 1225(b)(2) to apply only to arriving aliens at the border, it surely would have said so. *See Buenrostro-Mendez*, 166 F.4th at 504. And there is no merit to Petitioner's

---

[3] Statutory language underscores the point in providing that "'admission'. . . mean[s], with respect to an alien, the *lawful* entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13) (emphasis added). Until her entry into the United States is lawful, Petitioner remains an "applicant for admission," and thus her detention during removal proceedings is mandatory under Section 1225(b)(2). *See Avila v. Bondi*, No. 25-3248, 2026 WL 819258, at *2 (8th Cir. Mar. 25, 2026).

related argument that she is not "seeking admission" because she is not at the border. As both the Fifth and Eighth Circuits have held, "the ordinary meanings of the phrases 'applicant for admission' and 'seeking admission' are the same," *Avila*, 170 F.4th at 1133, because "when a person applies for something, they are necessarily seeking it," *Buenrostro-Mendez*, 166 F.4th at 502. *See also* 8 U.S.C. § 1225(a)(3) (referring to aliens "who are applicants for admission *or otherwise* seeking admission") (emphasis added). The statutory context confirms the point: The statute does not say that an applicant for admission must be detained "if" she is seeking admission, which strongly suggests that the two phrases do not impose separate conditions. *See Avila*, 170 F.4th at 1133. Moreover, to the extent Petitioner seeks to remain in the country—as she presumably does because she is not consenting to be removed—she is "seeking admission" even on her own reading of that phrase as a separate condition.

Petitioner further argues that Section 1225 applies only to those apprehended at or near the border upon arrival or shortly thereafter, not to those arrested later in the interior because mandatory detention for all who enter without inspection would render superfluous other parts of Section 1225(b)(2)(A), Section 1226(c), and the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025). Doc. 1, at 6–7. Not so. That Section 1225(b)(2)(A) requires Petitioner's detention in no way renders superfluous the statutory exception to detention for those aliens who were deemed by an "examining immigration office" to be "clearly and beyond a doubt entitled to be admitted." The exception can apply to other aliens, even if Petitioner has no hope of it because she entered without presenting herself. Doc. 1, at 3. And Petitioner's other anti-superfluity arguments likewise fail: Section "1226(c) and the Laken Riley Act do not mandate the detention of aliens who otherwise would *not* be subject to mandatory detention, but instead they mandate the *timing* of the detention of certain aliens"—specifically, by providing that those aliens shall be detained following release

6

from an underlying offense. *Gomez v. Daley*, No. 2:25-CV-00150-SCM, 2026 WL 252496, at *6 (E.D. Ky. Jan. 30, 2026); *see also Gomez Hernandez v. Lyons*, No. 1:25-CV-216-H, 2026 WL 31775, at *7 (N.D. Tex. Jan. 6, 2026) ("[T]he [Laken Riley Act] was not meaningless—it narrowed the discretion afforded to any Administration exercising detention authority under Section 1226."). Petitioner's anti-superfluity argument is thus baseless—but even if there were some superfluity that would not justify rewriting the plain text of Section 1225. *See Barton v. Barr*, 590 U.S. 222, 239 (2020). Petitioner's statutory challenge to her detention therefore fails.

Petitioner's administrative law argument is equally unavailing. Doc. 1, at 7-8. The "major questions" doctrine cannot apply here when there is a clear mandate for agency action provided by the plain language of Section 1225. *See West Virginia v. EPA*, 597 U.S. 697, 732 (2022); *Cisneros v. Noem*, No. 2:25-CV-1170-HCN, 2026 WL 396300, at *4 & n.5 (D. Utah Feb. 12, 2026).

## II.   The Central District of California's decision in *Maldonado Bautista* cannot justify deviating from the statutory mandate.

Petitioner appears to contend that, no matter whether Section 1225 mandates detention, she is entitled to a bond hearing because the Central District of California in *Maldonado Bautista v. Ernesto Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3289861, at *11 (C.D. Cal. Nov. 20, 2025), vacated the BIA decision (*Matter of Yajure-Hurtado*, 29 I. & N. Dec. 445 (BIA 2022)) that "formalized" the detention policy being applied to her. Doc. 1, at 1.  Of course, a district court's decision cannot in and of itself trump a statutory mandate. So, without more, Section 1225(b)'s mandate of detention still applies even if the Central District of California disagrees.

But Petitioner also argues that she was a member of the class in *Maldonado Bautista* and therefore is entitled to release based on that decision. Doc. 1, at 9. Petitioner's argument fails. The Central District made clear that it did not order "habeas relief for all class members across the

7

nation." *Maldonado Bautista*, 2025 WL 3713987, at *29.  Indeed, the district court in *Maldonado Bautista* acknowledged that it could not order release of detainees held outside of the Central District of California.  *Id.* at *30 ("To the extent Petitioners seek habeas relief for class members in immigration detention outside of this judicial district, the Court reiterates such an action would be ultra vires; there is no habeas jurisdiction to do so.").  The *Maldanado Bautista* decision is not binding here and, as noted, cannot justify deviating from Section 1225's mandate of detention. See *Akilimali v. Daley*, No. 2:25-CV-00194-SCM, 2026 WL 751893, at *6 (E.D. Ky. Mar. 17, 2026) (Meredith, J.).

### III.    Subjecting Petitioner to mandatory detention as required by a faithful interpretation of Section 1225 does not violate the Due Process Clause.

Petitioner also claims that her detention without a bond hearing violates the Due Process Clause. Doc. 1, at 11-14. "[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993) (citing *The Japanese Immigrant Case*, 189 U.S. 86, 100–101 (1903)). But, when a noncitizen has not been lawfully admitted to the United States, "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law" because such noncitizens have "only those rights regarding admission that Congress has provided by statute." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138, 140 (2020). This is the result of "the so-called 'entry fiction' theory of immigration law," under which "[a]liens who have not 'entered the United States within the meaning of the law,' i.e., who were never lawfully admitted and do not have leave to remain, are 'still in theory of law at the boundary line,'" *Gonzalez v. Ladwig*, No. 2:26-cv-02017-MSN-atc, 2026 WL 413602, at *11 (W.D. Tenn. 2026) (Norris, J.) (quoting *Kaplan v. Tod*, 267 U.S. 228, 230–31 (1925)), where they have only those rights provided by Congress. *See*

8

*Thuraissigiam*, 591 U.S. at 140. And, here, Congress did not provide a right to a bond hearing. 8 U.S.C. § 1225(b)(2)(A).

IV.    **Petitioner's claims under the APA fail because she has an adequate remedy in habeas.**

"The judicial review provisions of the APA provide a limited cause of action for parties adversely affected by agency action." *Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 494 (6th Cir. 2014). Importantly, judicial review of final agency action under the APA is only available when "there is no other adequate remedy in a court." 5 U.S.C. § 704. This limitation ensures that "the APA's general grant of jurisdiction to review agency decisions is not duplicative of more specific statutory procedures for judicial review." *Bangura v. Hansen*, 434 F.3d 487, 501 (6th Cir. 2006). In this case, habeas corpus provides an adequate remedy for Petitioner's claims. *See Singh v. Noem*, No. 2:25-CV-00157-SCM, 2026 WL 74558, at *7 (E.D. Ky. Jan. 9, 2026); *cf. Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (noncitizens' challenge to confinement and removal under the Alien Enemies Act fell within the "core" of habeas corpus and thus could not be brought under the APA). APA review therefore is inapplicable here, and Petitioner's claims fail to the extent they are based on the APA. Doc. 1, at 14-15; *see Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 428 (6th Cir. 2016).

## CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**. The Clerk is **DIRECTED TO CLOSE THIS CASE**.

**IT IS SO ORDERED**, this 24th day of April, 2026.

s/ *Brian C. Lea*
_____
BRIAN C. LEA
UNITED STATES DISTRICT JUDGE